Filed 7/24/13  Wilkins v. State of California CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TERRIE WILKINS, | |
| Plaintiff and Appellant, | E054540 |
| v. | (Super.Ct.No. CIVVS802696) |
| STATE OF CALIFORNIA, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Affirmed.

Law Offices of John R. Blanchard and John R. Blanchard for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Kathleen Kenealy, Chief Assistant Attorney General, Steven M. Gevercer and Joel A. Davis, Deputy Attorneys General, for Defendant and Respondent.

1

This is a wrongful death action arising from the tragic drowning of plaintiff and appellant Terrie Wilkins's six-year-old son at Lake Silverwood. On June 30, 2011, the trial court granted the motion for summary judgment of defendant and respondent State of California (the State). Judgment was entered accordingly, and Wilkins appeals.

## FACTUAL AND PROCEDURAL HISTORY

A. <u>DISPUTED AND UNDISPUTED FACTS</u>

The undisputed facts of the case are as follows: "Plaintiff Terri Wilkins [(Plaintiff)] is the mother of six year old son Jahdyn Duncan [(Jahdyn)] who drowned on June 16, 2007 at the Sawpit Swim Beach area of Lake Silverwood, a reservoir in the Lake Silverwood State Recreation Area [(Lake Silverwood Park)]. [¶] Plaintiff had been setting up a picnic and barbecue for family and friends at a Lake Silverwood Park camp site when she realized [Jahdyn] was no longer in the camp site area. Plaintiff left the camp site to search for her son and then saw him floating face down in the water at the reservoir's designated swimming area, Sawpit Swim Beach. [¶] . . . [¶] Lifeguard Ashley Hays [(Hays)] did not know [Jahdyn] was in need of assistance prior to seeing him floating face down in the water. [¶] . . . [¶] [Hays] did not speak to plaintiff or [Jahdyn] before [Jahdyn] entered the water. [¶] [Hays] heard no promise made to plaintiff or [Jahdyn] that any lifeguard, state employee, or anyone else would supervise, assist or otherwise protect [Jahdyn]. [¶] [Hays] did not hear any lifeguard, State employee, or anyone else speak to plaintiff or [Jahdyn] [and make any] promise to the child, child's mother before [Jahdyn] entered the water."

Disputed facts included plaintiff's contention, based on Hays's declaration, that Hays was not aware of the emergency until someone yelled that there was a boy in the water. She then recovered the boy's body and attempted to revive him. The State asserted Hays made no promise to Jahdyn to supervise, assist or otherwise protect Jahdyn. Plaintiff disputed the assertion and claimed Hays's actions "conveyed to all patrons in the area that . . . Hays was 'on duty' and prepared to render assistance to any swimmer in need."

The parties also disagreed on (1) whether Lake Silverwood reservoir was a dangerous condition of public property at the time of the accident; (2) whether there had been modifications to create the beach before the reservoir filled in 1972, or subsequently; and (3) whether plaintiff's "premise liability" claims are barred because they were not presented in plaintiff's Tort Claims Act claim form.

B.       THE MOTION FOR SUMMARY JUDGMENT

In its statement of undisputed material facts, the State framed four issues: (1) The State alleged that the first cause of action for negligence causing wrongful death was defective because the State had no statutory responsibility to protect swimmers, and the lifeguard owed no relevant duty to protect Jahdyn; (2) the swimming beach at Silverwood Lake was not a dangerous condition of public property; (3) there is no cause of action for premise liability because the immunities stated in sections 821.2 and 821.21 apply;[1] and

_____

[1] All further statutory references are to the Government Code unless indicated.

(4) the premises liability cause of action is barred because it was not mentioned in plaintiff' claim filed with the Victim Compensation and Government Claims Board.

The trial court agreed with the State and found the State "met its initial burden of demonstrating a lack of duty to plaintiff or [Jahdyn], a lack of a dangerous condition of public property, the action was barred by government immunity, and plaintiff had failed to produce admissible evidence to show the existence of a triable issue of material fact." It therefore rendered judgment for the State.

## DISCUSSION

"We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

Under the Tort Claims Act, it is generally true that a public entity is not derivatively liable for the act or omission of a public employee unless there is a statutory basis for liability. (§ 815, subd. (a).) The public entity can be directly liable for injury caused by a dangerous condition of public property under section 835.

Plaintiff advances two theories of liability based on section 835, subdivision (a). That section states: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the

4

scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

First, plaintiff contends that the lifeguard's negligence *created* a dangerous condition of public property. Second, plaintiff contends that the beach *itself* was a dangerous condition of public property.

## A. THE TRIAL COURT'S FINDING THAT THE STATE OWED NO DUTY TO PLAINTIFF OR JAHDYN

The State attacks plaintiff's first theory by contending that the lifeguard was not negligent because the lifeguard owed no duty of care to plaintiff or Jahdyn.

The state first argues that the existence of a duty of care is a matter of law. (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 750.) It then argues, "a person, including a police officer, owes no duty to protect or control the conduct of another. Such a duty may arise only if a 'special relationship' exists between the actor and the other person, which gives the other person the right to protection. (*Camp v. State of California* (2010) 184 Cal.App.4th 967, 975-979; *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203; *Williams v. State of California* (1983) 34 Cal.3d 18, 23-24 [(*Williams*)].)"

In *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, our Supreme Court held, "'[a]s a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.' [Citation.] A duty to control the conduct of

5

another or to warn persons endangered by such conduct may arise, however, out of what is called a 'special relationship,' . . . . Such a duty may arise if '"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection."' [Citations.] '"This rule derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter."' [Citation.]" (*Id.* at p. 1129.)

The State also relies on *Williams*, *supra*, 34 Cal.3d 18: "Applying the general principles of law represented in the decisions reviewed above, from *McCorkle* to *Mann*, we conclude that plaintiff has not stated a cause of action in that she fails to establish a duty of care owed by defendant state. The officers did not create the peril in which plaintiff found herself; they took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there is no indication that they voluntarily assumed any responsibility to protect plaintiff's prospects for recovery by civil litigation; and there are no allegations of the requisite factors to a finding of special relationship, namely detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened her position." (*Id*. at pp. 27-28, fn. omitted.)

In response, plaintiff contends that the action "is based on the special relationship created when the State voluntarily undertook to provide protective services for the general public, including [Jahdyn]." However, *Williams* is clear that there is no special relationship between police and the general public, and that the correct rule is that when

6

"the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization. [Citation.]" (*Williams*, *supra*, 34 Cal.3d at p. 24.)

Plaintiff responds that *Williams* and related cases only apply to "'emergency rescue personnel'" such as police officers and paramedics, not lifeguards. "There is a whole different lines [*sic*] of cases dealing with lifeguards."

Plaintiff's position is untenable. First, it seems obvious that lifeguards, policemen and paramedics are equally entitled to be called "emergency rescue personnel." (*Zepeda v. City of Los Angeles* (1990) 223 Cal.App.3d 232, 236 ["[T]he City's paramedics had no general duty to render aid to plaintiffs' decedent"].) Like policemen and paramedics, lifeguards have a general duty to protect members of the public, but there is no special relationship between a particular lifeguard and a particular swimmer unless there are additional facts showing the existence of such a relationship. No such facts were alleged here.

As our Supreme Court commented in *Williams*: "One might well question whether the drowning man is not similarly dependent on the swimmer on shore; it is settled that there is no *legal* duty to come to the rescue. [Citations.]" (*Williams*, *supra*, 34 Cal.3d at p. 26, fn. 6.)

More importantly, although plaintiff tells us the law is different for lifeguards, and thoroughly attempts to distinguish the cases relied on by the State, plaintiff does not cite cases to support her position. Instead, plaintiff cites Health and Safety Code section

7

1797.182, which requires that lifeguards be trained in first aid and cardiopulmonary resuscitation; Health and Safety Code section 116025, which defines a public swimming pool; and Health and Safety Code section 116045, which states that lifeguard services shall be provided, or warning signs posted. Plaintiff also cites a regulation that states when lifeguard services are provided, the number of lifeguards must be adequate to maintain continuous surveillance over the bathers. (Cal. Code Regs., tit. 22, § 65539, subd. (b).)

In response, the State argues the swimming pool regulations are irrelevant because they are part of the regulations entitled "'Public Swimming Pools.'" The State points out that a separate article deals with state reservoirs open for public recreation. (Health & Saf. Code, §§ 115825-115850.) We agree and must conclude that allegations of a general duty are insufficient in the absence of allegations that there was a special relationship between the lifeguard and plaintiff or Jahdyn.

Since the existence of a duty is a question of law, the trial court correctly found that since there was no duty there was no negligence within the meaning of section 835. Without a finding of negligence, section 835, subdivision (a) is inapplicable and plaintiff has therefore failed to establish liability under the conditions stated in section 835.

B.     PLAINTIFF'S CONTENTION THAT THE BEACH ITSELF WAS A DANGEROUS CONDITION OF PUBLIC PROPERTY

Under this heading, plaintiff acknowledges the absolute immunity of the State under sections 831.2 and 831.21, subdivision (a), but argues those immunities are not applicable because the reservoir was not in a natural condition.

8

Section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

Section 831.21, subdivision (a) states: "(a) Public beaches shall be deemed to be in a natural condition and unimproved notwithstanding the provision or absence of public safety services such as lifeguards, police or sheriff patrols, medical services, fire protection services, beach cleanup services, or signs. The provisions of this section shall apply only to natural conditions of public property and shall not limit any liability or immunity that may otherwise exist pursuant to this division."

The State cites *Osgood v. County of Shasta* (1975) 50 Cal.App.3d 586. In that case, after reviewing the legislative history of section 831.2, the court held: "The foregoing legislative history makes the legislative intent regarding section 831.2 unmistakably clear. The Legislature rejected a limited immunity inapplicable to artificial lakes in favor of an unconditional immunity applicable to all public lakes, including Shasta Lake. And it goes without saying that the shoreline of the lake is a natural condition thereof within the meaning of the section." (*Id*. at p. 590.)

The State cites two other cases holding the immunity applicable in the case of reservoirs: *Eben v. State of California* (1982) 130 Cal.App.3d 416, 422 through 424, and *Keyes v. Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 887 through 889.

In *Eben*, a water-skier fell and struck a submerged rock near the shoreline of Millerton Lake. (*Eben v. State of California*, *supra*, 130 Cal.App.3d at p. 418.) The court considered the improvements cited by the plaintiff but found that the absolute

9

immunity of section 831.2 applied because "[n]o evidence was adduced to link the improvements, causally or otherwise, with the accident." (*Eben*, at p. 425.)

Similarly, in *Keyes*, a swimmer was injured when he struck a submerged object while swimming and diving in Lexington Reservoir. (*Keyes v. Santa Clara Valley Water Dist.*, *supra*, 128 Cal.App.3d at p. 884.) The court held that, to defeat immunity, the plaintiff must at least allege a "causal nexus between the dangerous condition and either human conduct or an artificial improvement." (*Id.* at p. 888.) Although the immunity of section 831.2 applied, the plaintiff was given the opportunity to amend his complaint to allege that an artificial condition caused his injury. (*Keys*, at p. 890.)

Here, the State provided the declaration of Ron Krueper (Krueper), the former park superintendent, to establish that there had been no improvements since the construction of the reservoir in 1972. He stated that there had not been any modification to the bottom or floor of the beach since that time. Although the trial court was entitled to accept Krueper's declaration as credible, plaintiff spends several paragraphs attacking it. Plaintiff concludes that the State has not established that the beach and swimming area were in a natural condition.

Plaintiff cites *Buchanan v. City of Newport Beach* (1975) 50 Cal.App.3d 221. In that case, the city was held liable despite the immunity because the beach had been artificially constructed. However, there was no such evidence here. Plaintiff failed to submit any declarations that would have created a material factual issue. Plaintiff relies on her interrogatory answers, which describe "numerous construction projects in and

10

around the lake." Nevertheless, plaintiff fails to show a causal connection between any such project and the drowning death of Jahdyn.

Plaintiff relies on *Gonzales v. City of San Diego* (1982) 130 Cal.App.3d 882. In that case, the court held the immunity of section 831.2 was inapplicable because the complaint "describes a hybrid dangerous condition, partially natural and partially artificial in character, the result of a combination of a natural defect within the property and the third party conduct of City. Thus, the dangerous condition here arose from the existence of a natural dangerous riptide condition, plus City's voluntarily providing lifeguard service at Black's beach (a duty with which it impliedly was not burdened under § 831.2), and its performing that voluntarily assumed service negligently by failing to warn of the known, hazardous, natural condition." (*Gonzales*, at pp. 885-886.) The case thus provides some support for plaintiff's theory that such a "hybrid condition" was a factual issue under the pleadings here.

The State responds by arguing that *Gonzales* was statutorily overruled by the enactment of section 831.21 in 1987. Subdivision (a) provides: "Public beaches shall be deemed to be in a natural condition and unimproved notwithstanding the provision or absence of public safety services such as lifeguards, police or sheriff patrols, medical services, fire protection services, beach cleanup services, or signs. The provisions of this section shall apply only to natural conditions of public property and shall not limit any liability or immunity that may otherwise exist pursuant to this division."

11

The State cites *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, overruled on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532.  Knight was severely injured while bodysurfing at Capitola.  (*Knight*, at p. 923.)  His theory of the action was that the beach was essentially rebuilt in the 1970s by the Army Corps of Engineers, and this rebuilding essentially created a dangerous condition of public property.  (*Id*. at p. 925.)  The court found section 831.2 provided a complete defense to liability.  (*Knight*, at p. 926.)  In discussing *Gonzales*, the court stated that it was prospectively abrogated by the adoption of section 831.21.  (*Knight*, at pp. 929-930.)  The court cited a number of other cases criticizing *Gonzales* and held that, regardless of whether or not *Gonzales* is good law, it did not support Knight's argument because there was no evidence the victim relied on lifeguards to prevent him from making an unsafe dive.  (*Knight*, at p. 930.)  Similarly, in the present case, there is also no evidence that six-year-old Jahdyn relied on the lifeguards.

Witkin characterizes the enactment of section 831.21 as partially rejecting the liability imposed by *Gonzales*.  (5 Witkin, Summary of California Law (10th ed. 2005) Torts, § 254(2), p. 424.)  Another authority states:  "However, the application of [the *Gonzales*] rule to public beaches has now been reversed by statute, at least to the extent that the entity's inducing conduct involves the provision of protective services, such as lifeguards or security services."  (5 Levy et al., Cal. Torts (2013) Unimproved Public Property, § 61.03[7][a][iii], p. 61-58, citing § 831.21 and *Geffen v. City of Los Angeles* (1987) 197 Cal.App.3d 188, 192-194.)

In *Geffen v. City of Los Angeles*, *supra*, 197 Cal.App.3d 188, the court reviewed *Gonzales* and concluded that it "represents an unwarranted curtailment of the rule of governmental tort immunity." (*Geffen*, at p. 192.) Accordingly, the court refused to follow the "hybrid condition" rationale of *Gonzales*. It also reviewed the legislative history of section 831.2 and concluded the "hybrid condition" rationale "is thus directly inconsistent with the plain meaning of the absolute immunity language embodied in section 831.2." (*Geffen*, at p. 194.) Finally, it said: "We further note that in enacting new section 831.21 (Stats. 1987, ch. 1209), the Legislature has specifically abrogated *Gonzales*. Although we do not rely upon this statute for our result since its application is prospective only, its passage is consistent with our conclusion that *Gonzales* represents an unwarranted restriction of sovereign immunity and should not be followed." (*Ibid*, fn. omitted.)

We agree with the State that *Gonzales* is not good law, and even if it was, plaintiff has not shown a naturally dangerous condition of the swimming area. Plaintiff has only alleged the other half of the "hybrid condition" argument, i.e., the voluntary providing of lifeguard service at the beach. (See also *Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 759, 763-764, [section 831.2 natural condition immunity applies to mountain lion attack].)

We therefore conclude plaintiff did not meet her burden of showing the existence of a triable issue of material fact. Since the State demonstrated the immunities of sections 831.2 and 831.21 are applicable, the trial court correctly granted the State's motion for summary judgment.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

14